*In re* JUAN PEÑAGARÍCANO, JR., querellado.

*Número:* O-80-620     *Resuelto:* 22 de junio de 1981

*Héctor A. Colón Cruz, Procurador General, y Rosa Negrón, Procuradora General Auxiliar,* abogados de El Pueblo; *Herman W. Colberg y Alex González,* abogados del querellado.

PER CURIAM:   Tratándose de una cuestión de credibilidad, remitimos la querella formulada contra el Lcdo. Juan T. Peñagarícano, Jr. —por alegadamente haber cobrado a la Sra. Flora A. Rosa Vélez honorarios en exceso de lo pactado, en contravención del Canon 24 de los de Ética Profesional— para que fuera ventilada en vista plenaria ante el Comisionado Especial, Hon. Alfonso García Martínez. Previo trámite al efecto, éste nos ha certificado sus conclusiones de hecho a la luz de la prueba desfilada por las partes. En lo pertinente rezan:

En este caso los testimonios coinciden sustancialmente sobre lo que ocurrió en la oficina del Lic. Peñagarícano el 28 de febrero de 1980 hasta que se cambia el cheque de $7,000 en el banco. Hacemos la siguiente certificación de pruebas y conclusiones de hechos:

PRIMERA:   Doña Flora recibió una llamada del Lic. Peñagarícano el 27 de febrero de 1980, informándole que habían llegado los cheques de una transacción en el caso civil 77-4583 (805) sobre Daños y Perjuicios en San Juan. El caso surgió como consecuencia de las lesiones de Wanda, menor, hija de doña Flora y José Valdés Martínez, en relación concubinaria. Se hizo un cheque por $8,000 a favor de la menor, adjudicando el Tribunal $2,000 en concepto de honorarios de abogado. Se hizo otro cheque por $7,000 a favor de José Valdés, doña Flora y el Lic. Peñagarícano.

SEGUNDA:   Doña Flora, acompañada de Wanda se personó en la oficina del Lic. Peñagarícano. Allí firmó por José que se había ausentado de Puerto Rico hacía tres años y medio. Existe una pequeña discrepancia y vacilación en el testimonio de doña Flora sobre si firmó (endosó) el cheque con su nombre en la oficina o en el banco. Damos crédito a la versión de la señora Alicia Torres de que en la oficina firmó doña Flora por José y que allí también firmó el Lic. Peñagarícano y que más tarde en el Banco de San Juan firmó doña Flora, porque esa es la política del banco en cuanto a firmas, según declaró doña Alicia.

TERCERA:   En el banco doña Alicia cambió el cheque de $7,000 y ordenó que se preparara un cheque del gerente por $2,000 que entregó a doña Flora. Hasta aquí existe sustancial coincidencia en las versiones, salvo que doña Flora menciona en su testimonio oral que tuvo una discusión con el querellado sobre cuánto le tocaba a ella. La discrepancia en las versiones de los hechos se manifiesta aquí por primera vez y se agrava después del hecho indubitado de que en el banco doña Flora recibió el cheque del Gerente por $2,000.

CUARTA:   Doña Flora declaró que recibió el cheque de $2,000, que no comentó nada y que se despidió de Alicia, tomó la guagua y no volvió a la oficina del Lic. Peñagarícano porque éste le dijo cuando estaba firmando en la oficina, antes, que no volviera más. La versión de doña Alicia, es totalmente coincidente con la que aparece en su declaración jurada en la oficina del Procurador de 2 de diciembre de 1980. Esta declaración es totalmente favorable a la contención del querellado y el testimonio oral de doña Alicia es totalmente congruente con la declaración mencionada. Por supuesto, y como hemos señalado, esa es la versión del querellado. Es importante en la determinación de la credibilidad de las versiones contrapuestas, esto es, de un lado, la versión de doña Flora y del otro la versión del querellado, el hecho de que la versión exculpatoria viene a través de doña Alicia, testigo presentado por la propia oficina del Procurador. De modo que tenemos del lado de la prueba del Procurador una versión escindida, una parte neutralizando la otra. *Ante esta situación nos inclinamos a darle crédito a la versión de los hechos que sitúan a doña Flora de regreso del banco en la oficina del querellado donde recibe alrededor de $2,300. No existe recibo por estos $2,300 porque de*

*acuerdo con las declaraciones categóricas del Lic. Peñagarí-
cano, no controvertidas, él no exige recibos a sus clientes. Su
contabilidad descansa en las anotaciones en los expedientes.
Esa es la prueba que hemos tenido ante nosotros y a base de
esa prueba hemos determinado los hechos.* (Énfasis nuestro.)

Las apreciaciones fácticas ante transcritas resisten los
señalamientos del Procurador General, predicados en las
supuestas contradicciones de la testigo Alicia Torres de
González —secretaria del querellado— presentes en las dos
declaraciones que jurara. Ante la conclusión precisa del
Comisionado, debemos abstenernos de especular sobre
otras posibles motivaciones. Resolvemos que el querellado
Peñagarícano ha quedado exonerado del cargo imputádole.

No obstante, sirva esta decisión para exhortar a toda la
profesión jurídica —como medida cautelar futura en el
desempeño de su gestión profesional— la necesidad de que
exija recibos a sus clientes cuando desembolse dineros y
retenga los honorarios de abogado pactados.

*Se dictará la correspondiente sentencia.*

El Juez Presidente Señor Trías Monge no intervino.